UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUPERIOR MERCHANT SERVICES, LLC., <br><br>                Plaintiff, <br><br>     v. <br><br> KENNETH W. BELL, *et al.*, <br><br>                Defendants. | Case No. 4:11-cv-00487-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Defendants' Motion to Dismiss or Transfer Venue (Dkt. 12). The Motion is fully briefed and at issue. For the reasons expressed below, the Court will deny the Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and (3). The Court will also deny the Motion to Transfer Venue.

## BACKGROUND

Plaintiff Superior Merchant Services, LLC ("SMS"), is an Idaho limited liability company with its primary place of business in Bonneville County, Idaho. *Compl.* ¶ 1. Plaintiffs Shane Fisher and Jeremy Livingston are Idaho residents, as well as members and managers of SMS. *Id.* Defendants Ken Bell, Brett Bell, Mark Bell, and Christian R. Larsen reside in Davis County, Utah. *Id.* at ¶¶ 2-5; *Def.'s Br.* at 5, Dkt. 13. Defendant YKnot Holdings, LLC is a Utah limited liability company with its principal place of

business located in Davis County, Utah.  *Id.*  Ken Bell, Brett Bell, Mark Bell, and Christian Larsen are the members and managers of Yknot.  *Compl.* ¶ 6;  *Brett Bell Aff.* ¶ 4, Dkt. 13-1.

In mid-2010, SMS and YKnot formed Six Marketing, LLC ("Six Marketing"), a Utah limited liability company with its principal place of business in Davis County, Utah.  *Compl.* ¶ 7.  SMS owns a one-third membership interest in Six Marketing, while YKnot owns the other two-thirds.  *Compl.* ¶ 23.  In forming Six Marketing, YKnot agreed to contribute internet sales and marketing services, while SMS agreed to contribute merchant processing services.  *Id.* at ¶ 34.  Sometime after forming Six Marketing the working relationship between Plaintiffs and Defendants eroded, causing SMS to file this action.  Six Marketing is also a named defendant in this suit.

 The Plaintiffs' primary cause of action, among other allegations, is for breach of contract.  *Id.* at ¶¶ 77-117.  Defendants brought this motion challenging personal jurisdiction and venue.  This decision will address each issue in turn.

## PERSONAL JURISDICTION LEGAL STANDARD

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving jurisdiction is appropriate.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts."  *Id.* (internal quotation marks omitted).  In such cases, the court only inquires "into whether [the plaintiff's] pleadings

and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," uncontroverted allegations in the complaint must be taken as true. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 2000) (internal citations omitted). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.; see Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events").

Although there is no federal statute governing personal jurisdiction, the law of the state in which the district court sits applies. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 1990). The Idaho Supreme Court has determined that Idaho's long-arm statute (Idaho Code § 5-514) allows a broader application of personal jurisdiction than permitted under the Due Process Clause of the United States Constitution. *See Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F.Supp. 2.d 1114, 1119 (D. Idaho 2009). Thus, the Court need only address whether exercising personal jurisdiction comports with due process. *Id.*

The Court's exercise of personal jurisdiction is consistent with federal due process only if the defendant "has certain minimum contacts with the relevant forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).  The relevant inquiry in this case is whether Defendant's minimum contacts warrant the Court's exercise of specific, rather than general, jurisdiction over Defendant.  *See Yahoo! Inc.*, 433 F.3d at 1205.

## PERSONAL JURISDICTION ANALYSIS

### 1.    General Jurisdiction

For general jurisdiction to exist over a nonresident, the defendant must engage in "continuous and systematic general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)), that "approximate physical presence" in the forum state.  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Defendants rely on the affidavits of Robert Bell, Kenneth Bell, Marc Bell, and Christian Larsen to support their claim that they have never conducted business in Idaho, and thus are not subject to general jurisdiction.  *Def.'s Br.* at 3, Dkt. 13.  Plaintiffs' allegation that Six Marketing's "websites are obviously accessible to Idaho residents," and "it is extremely likely that defendants made sales to Idaho residents," does not persuade the Court that Defendants maintain substantial and continuous business operations in Idaho.  *Pl.'s Resp.* at 6, Dkt. 19.  Similarly, the Court finds Plaintiffs' "alter ego" argument unpersuasive to establish general jurisdiction.  *See Id.* at 7.  Plaintiffs' allegation that Defendants used at least four Idaho-based companies as Six Marketing's

alter ego for marketing purposes is largely unsubstantiated. *Id.*; *see also Fisher Aff.* ¶¶ 3-5, 13-21, Dkt. 19-1; *Livingston Aff.* ¶¶ 3- 5, 13-21, Dkt. 19-2. "It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001)).

Plaintiffs failed to "make a prima facie showing" that the Idaho-base companies are Six Marketing's alter egos, and thus subject to general personal jurisdiction in Idaho. *Id.* Accordingly, the Court cannot exercise general personal jurisdiction because Defendants do not have "continuous and systematic general business contacts" in Idaho. *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416. Because Plaintiffs' allegations are insufficient to establish general personal jurisdiction over Defendants in Idaho, they must establish specific personal jurisdiction.

## 2.    Specific Jurisdiction

The Ninth Circuit analyzes specific jurisdiction according to a three-prong test: (1) the defendant must perform an act or consummate a transaction such that he "purposefully avails himself of the privilege of conducting activities in the forum;" (2) the claim must relate to or arise out of the defendant's activities in the forum; and (3) the court's exercise of jurisdiction must be reasonable. *See Yahoo! Inc.*, 433 F.3d at 1205-06; *Fred Martin Motor Co.*, 374 F.3d at 802. Plaintiff bears the burden of satisfying the fist two prongs of the test. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). If the

plaintiff succeeds in satisfying the first two prongs, the burden shifts to the defendant to come forward with a compelling case that the exercise of jurisdiction would not be reasonable. *Boschetto*, 539 F.3d at 1016 (internal cite omitted).

**A.**     ***Purposeful Availment***

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). Parties "who reach out beyond one state and create continuing relationships and obligations with citizens of [the forum state]" are subject to personal jurisdiction in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). This requirement is satisfied if the defendant "has taken deliberate action" toward the forum state. *Ballard v. Savage*, 65. F.3d 1495, 1498 (9th Cir. 1995). It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are "purposefully directed" toward forum residents. *Id.* (citing *Burger King Corp.*, 471 U.S. at 476 (1985)). Although not directly addressed by the Ninth Circuit, some lower courts have determined that consistent misrepresentations through telephonic and electronic communication qualify as affirmative conduct for specific jurisdiction purposes. *See e.g. Cody v. Ward*, 954 F.Supp. 43, 47 (D. Conn. 1997) (finding sufficient minimum contacts where nonresident defendant made fraudulent misrepresentations about a stock purchase through a series of e-mails and telephone calls).

Defendants argue that besides occasional communication with the Plaintiffs, they had next to no contact with Idaho. *Def.'s Br*. at 5, Dkt. 13. They further allege that Six Marketing is a Utah limited liability company and all business operations occurred in Utah. *Id*. As noted above, however, SMS, which owns a one-third membership in Six Marketing, contributed human and capital services to Six Marketing from its Idaho office. *Compl*. ¶ 34. Thus, Six Marketing performed operations from two offices in two different states. In conducting this business, Plaintiffs skyped, received phone calls, email, faxes, and text messages in Idaho from Defendants in Utah. *Pl.'s Resp*. at 13, Dkt. 19; *see also Fisher Aff*. ¶¶ 34-37, Dkt. 19-1; *Livingston Aff*. ¶¶ 34-37, Dkt. 19-2. Additionally, Plaintiffs capital contributions to Six Marketing consisted of a series wire transfers from Idaho to Utah, and they also received sales commission from Defendants in Utah through the same medium. *Pl.'s Resp*. at 13, Dkt. 19; *see also Fisher Aff*. ¶¶ 47-49, Dkt. 19-1; *Livingston Aff*. ¶¶ 47-49, Dkt. 19-2. Under these circumstances, the Court finds the first prong is satisfied because Defendants directed numerous actions at Plaintiffs in Idaho.

**B.** *Claims Arising out of Intentional Acts*

The next requirement for specific jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities. *See Yahoo! Inc.*, 433 F.3d at 1205-06. "[A] single forum state contact can support jurisdiction if the cause of action arises out of that particular contact of the defendant with the forum state." *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007). Here, Plaintiffs' breach of contract action arises directly from Defendants' purposeful contact with Plaintiffs in Idaho while

conducting business for Six Marketing.  Plaintiffs assert that misrepresentations and

omissions based on their involvement with Six Marketing were made during phone and

other communications from Utah to Idaho.  *Pl.'s Resp*. at 9, Dkt. 19.  Additionally, SMS

claims that Defendants carried out a wrongful scheme to force SMS out of Six Marketing.

*Id*. at 10.  This scheme was carried out through several actions directed at SMS in Idaho.

For example, SMS claims it was entitled to receive distribution payments in Idaho from

Defendants, but they misappropriated these funds, and attempted to hide the

misappropriations by transmitting apparent material misstatements in accounting

documents to SMS in Idaho.  *Id*. at 10-11.  Thus, the second prong of the specific

jurisdiction test is satisfied.

C.   ***Reasonableness of Exercising Specific Jurisdiction Over Nonresident Defendant***

Because Plaintiffs satisfied the first two prongs, the burden shifts to the

Defendants to "present a compelling case that the exercise of jurisdiction would not be

reasonable."  *See Boschetto,* 539 F.3d at 1016.  To determine the reasonableness of

exercising specific jurisdiction over a nonresident defendant, the court considers the

following factors:

> (1) the extent of the defendant's purposeful interjection into
> the forum state's affairs; (2) the burden on the defendant of
> defending in the forum; (3) the extent of conflict with the
> sovereignty of the defendant's state; (4) the forum state's
> interest in adjudicating the dispute; (5) the most efficient
> judicial resolution of the controversy; (6) the importance of
> the forum to the plaintiff's interest in convenient and effective
> relief; and (7) the existence of an alternative forum.

*See Menken*, 503 F.3d at 1057 (citing *Burger King Corp.*, 471 U.S. at 476-477).

The first factor is largely co-extensive with the purposeful availment prong. Because we already established that the Defendants directed numerous acts at the Plaintiffs in Idaho, the Court finds that this factor weighs in Plaintiffs' favor.

The second factor addresses the burden on the Defendants in traveling to Idaho to defend themselves. The primary concern is for the burden on a defendant who does not have the luxury, as does plaintiff, of deciding not to sue, or to sue in another forum. *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266 (9th Cir. 1981) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). However, unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justification for the exercise of jurisdiction." *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991). The burden on the Defendants living in Utah to litigate in Idaho is noted, but the inconvenience is minimal and certainly is not so great as to deprive them of due process. *See Panavision Int'l, L.P. v. Toeppen*, 1141 F.3d at 1323 (requiring defendant to travel from Illinois to litigate in California was not unreasonable). Here, the main reason Defendants cite as to why travel to Idaho would be burdensome is because Six Marketing's headquarters are in Utah. *Def.'s Br.* at 6, Dkt. 13. Without more, especially where Idaho and Utah boarder each other, the Court finds this factor weighs in favor of Plaintiffs.

The Defendants present no argument concerning the extent of conflict with Utah's

sovereignty or its interest in adjudicating the suit.  Moreover, Idaho has an unquestioned

interest in providing effective means of redress for residents claiming breach of contract.

In evaluating "the most efficient resolution" factor, the Ninth Circuit has "looked

primarily at where the witnesses and the evidence are likely to be located."  *CoreVent*

*Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993).  Defendants argue that Six

Marketing's business records and potential witnesses are both located in Utah.  *Def.'s Br.*

at 6, Dkt. 13.  Plaintiffs, however, undoubtedly keep their records in Idaho and potential

witnesses are likely to be located there as well.  The Court is also aware that both

Plaintiffs' and Defendants' counsel are from Utah.  It may be more costly and

inconvenient for Defendants to litigate in another forum, but the burden is relatively

slight, considering the short distance between Salt Lake City, Utah and Pocatello, Idaho

where this Court sits.

Regarding the sixth factor, the Plaintiffs reside in Idaho, and presumably filed its

action in Idaho, at least in part, for convenience.  *See Compl.* ¶ 1.  Plaintiffs also bear the

burden of proving the unavailability of an alternative forum, which they have not

demonstrated.  *CoreVent Corp.*, 11 F.3d at 1490.  In this case, Utah is an alternative

forum.  As stated above, it may be more costly and inconvenient for Defendants to litigate

in Idaho, but this is not an unreasonable burden.

Weighing all seven factors, the Court concludes that Defendants have not met their

burden of showing that the exercise of jurisdiction would be unreasonable.  *See*

*Panavision Int'l, L.P.*, 141 F.3d at 1324 (finding that defendant failed to present a

compelling case that exercise of jurisdiction in the forum state was unreasonable, even though some factors weighed in defendant's favor).  Accordingly, the motion to dismiss for lack of personal jurisdiction will be denied.

## LEGAL STANDARD FOR DETERMINING VENUE

Defendants also move to dismiss Plaintiffs' complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  A civil action wherein jurisdiction is founded solely on diversity of citizenship may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the event or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Thus, in order for venue to be proper within the District of Idaho, one of the three described circumstances must apply.  Plaintiffs bear the burden of showing that venue is properly laid in the instant forum.  *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  There is a strong presumption in favor of the plaintiff's forum choice.  *See Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000).  Because Plaintiffs only address venue under § 1391(a)(2), the Court will limit its discussion to that provision.

## VENUE ANALYSIS

In order to be substantial, "*significant* events or *omissions* material to the

plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original). Although not specifically addressed by the Ninth Circuit, other courts have determined that letters, faxes, e-mails, and telephone communication transmitted from or received in a district during the execution of a contract have been considered substantial events for venue purposes. *See Kirkpatrick v. Rays Group*, 71 F.Supp. 2d 204, 213-214 (D.C. N.Y. 1999).

Based on the Plaintiffs' allegations, the Court is satisfied that "a substantial part of the event or omissions giving rise to the claim occurred" in Idaho. § 1391(a)(2). Specifically, SMS's claims are founded in substantial part on actions which Defendants directed to Plaintiffs in Idaho. Plaintiffs assert misrepresentations and omissions based on their involvement with Six Marketing were made during phone and other communications from Utah to Idaho. *Pl.'s Resp*. at 13-14, Dkt. 19. "Frequently, one or more of the Defendants would call, email, fax, or otherwise contact [Plaintiffs] approximately every 45 minutes from early in the morning until well into the evening hours," regarding the business operations of Six Marketing. *Fisher Aff*. ¶ 35, Dkt. 19-1. Additionally, SMS made significant capital contributions to Six Marketing through a series of wire transfers from Idaho to Utah. *Pl.'s Resp*. at 13, Dkt. 19; *see also Fisher Aff*. ¶¶ 47-49, Dkt. 19-1; *Livingston Aff*. ¶¶ 47-49, Dkt. 19-2. Likewise, Plaintiffs in Idaho received merchant processing commission via wire transfers from Defendants in Utah. *Pl.'s Resp*. at 13, Dkt. 19; *see also Fisher Aff*. ¶ 54, Dkt. 19-1; *Livingston Aff*. ¶ 54, Dkt.

19-2.  Based on the foregoing, venue is proper in the District of Idaho because a substantial part of the events and omissions giving rise to Plaintiffs' claim occurred in Idaho.

## 1.	Transferring Venue

Alternatively, Defendants move to transfer venue to Utah.  On a motion to transfer venue, the court may consider:

> (1) the location where relevant agreements were negotiated and executed, (2) the state that is more familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  Whether transfer of venue is appropriate is at the discretion of the district court, on a "case-by-case consideration of convenience and fairness."  *Id*. at 498 (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

After considering these factors, the Court will deny Defendant's motion to transfer. Although the  parties in the instant case allegedly entered into an oral contract to form Six Marketing in Utah, business operations were conducted in both Utah and Idaho.  *See Compl*. ¶¶ 29-30.  Additionally, Idaho would be most familiar with Plaintiff's state law claims.  *See Id*. at ¶¶ 30, 77-106.   Plaintiffs presumably chose to file suit in the District of Idaho because SMS is located in Idaho and their contacts related to the causes of action are likely located

in Idaho and Utah. *Id*. at ¶ 1. While the costs associated with maintaining a suit in Idaho may be a bit higher for Defendants due to travel from the Salt Lake area to Pocatello, the Court has already established that this is a slight burden. Finally, although Defendants allegedly maintain most of Six Marketing's records in Utah, additional records and witnesses will likely to be located in Idaho. *Id*. at. ¶¶ 47-55. Accordingly, the motion to transfer venue is denied because, as the Court previously determined, venue is appropriate in the District of Idaho and there is a strong presumption in favor of the plaintiff's forum choice. *See Ravelo Monegro*, 211 F.3d at 513.

## ORDER

**IT IS ORDERED:**

1.  Defendants' Motion to Dismiss (Dkt. 12) is **DENIED**.

2.  Defendants' Motion to Transfer Venue (Dkt. 12) is **DENIED**.

DATED: **January 27, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge